**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

CENTER FOR BIOLOGICAL DIVERSITY,

Plaintiff,

v.

NATIONAL MARINE FISHERIES SERVICE, HOWARD LUTNICK, in his official capacity as Secretary of Commerce, SAMUEL D. RAUCH, III, in his official capacity as Deputy Assistant Administrator for Regulatory Programs, National Marine Fisheries Service, and JON KURLAND, in his official capacity as Alaska Regional Administrator, National Marine Fisheries Service,

Defendants,

and

AT-SEA PROCESSORS ASSOCIATION, UNITED CATCHER BOATS, MIDWATER TRAWLERS COOPERATIVE, and CITY OF UNALASKA

Defendant-Intervenors.

3:26-cv-00154-ACP

**ORDER DENYING ADMISSION OF EXTRA-RECORD EVIDENCE**

[Dkt. 26]

The Center for Biological Diversity challenges the National Marine Fisheries Service's management of the Bering Sea and Aleutian Islands pollock fishery. (Dkt. 1) CBD argues that NMFS and associated Federal Defendants failed to properly consider pollock's importance to northern fur seals when they issued the current Harvest

Specifications for the fishery. (Dkt. 1 at 26-30) In support of this argument, CBD moved to admit the declaration of former NMFS scientist Lowell W. Fritz as extra-record evidence. (Dkt. 26) Defendants opposed this motion. (Dkt. 37)

CBD's motion is **DENIED** for the reasons explained below.

## I. BACKGROUND

CBD filed their Complaint on April 8, 2026. (Dkt. 1) The subsequent trial scheduling order required CBD to file any motions to complete and/or supplement the Administrative Record by August 12. (Dkt. 12 at 3) CBD did not file any such motion. Instead, on August 31, CBD filed the present Motion to Admit Declaration of Lowell W. Fritz as Extra-Record Evidence alongside their Motion for Summary Judgment. (Dkt. 25; Dkt. 26)

Defendants requested additional time to file their summary judgment opposition in response to CBD's motions. (Dkt. 34) They argued that their opposition would change depending on whether the declaration became part of the record, and therefore that it would prejudice them to conditionally brief around that uncertainty. (*Id.*) The Court granted Defendants' requested relief while it considered whether to admit the declaration. (Dkt. 41)

Fritz's declaration discusses the relationship between northern fur seals and Eastern Bering Sea pollock. Fritz seems well-informed given that he worked as a fisheries scientist at NMFS for 27 years before retiring in 2017. (Dkt. 26-1 at 27-28) In fact, while at NMFS, Fritrz lead the team responsible for modeling the northern fur seal population. (*Id.*) He also helped estimate the abundance of pollock during the annual process to determine fishery catch quotas. (*Id.*) And central to this case, Fritz worked on a 2021 study by Short et al.

which examined the interaction between the pollock fishery and the northern fur seal population. (*Id.* at 37) This study is in the administrative record.[1] (REF00001) Fritz's declaration cites this study to conclude that "competition between the Eastern Bering Sea pollock fishery and lactating female northern fur seals for high-density aggregations of pollock has significantly contributed to and may be solely responsible for the decline of the breeding population of northern fur seal on St. Paul Island for at least the last 30 years." (Dkt. 26-1 at 3-4, 22)

The declaration proceeds in several parts. The first five numbered paragraphs explain Fritz's scientific background, the basis for his opinion, and his basic thesis that the pollock fishery "may be solely responsible for" the northern fur seal population decline. (*Id.* at 1-4) Paragraphs 6-12 then explain northern fur seal biology, history, and breeding on the Pribilof Islands. (*Id.* at 4-9) Paragraphs 13-22 go on to describe northern fur seal foraging habits and the role pollock plays in their diet, particularly for female seals on St. Paul. (*Id.* at 9-13) These background sections cite multiple studies in the administrative record. (*Id.*)

At paragraph 24, the declaration transitions from general background information into describing "how pollock fishing reduces prey availability for female northern fur seals and how that effects survival of their pups after weaning." (*Id.* at 14-21) In brief, Fritz asserts that the fishery reduces the pollock available to lactating female fur seals, that this

---

[1] The administrative record has been filed conventionally. (Dkt. 19) Documents within the record are organized by Bates number. The record contains a spreadsheet identifying the initial Bates number for each document. (*See* Dkt. 19-1) The first citation to a document identifies its initial Bates number. Subsequent citations identify the Bates number of the relevant pages.

negatively impacts the weaning of their pups, that this in turn means the pups attain lower body weight, and ultimately that lower weight pups have less likelihood of surviving to maturity. Although this section of the declaration cites several studies in the record, the key piece of support is the 2021 Short et al. study. (*Id.* at 15) This section explains how that study modeled northern fur seal population growth based on pollock catch in the seal foraging area. (*Id.* at 15-19) It also validates the model's predictions by comparing them to NMFS's own predictions. (*Id.* at 17-18) It then takes the matter one step further. Starting at paragraph 27, it predicts how many seal pups have been lost due to pollock trawl fishing. (*Id.* at 17-19) Fritz calculates the loss as 123,355 to 249,524 female pups between 1992 and 2017. (*Id.*at 19) He bases this assertion on the 2021 study and assumptions about the 'natural' morality of female seal pups. (*Id.* at 19-20)

Fritz's declaration concludes in paragraphs 30-32. (*Id.* at 22-24) This conclusion summarizes Fritz's thesis that the pollock fishery is responsible for the downward fur seal population trend. (*Id.*) It also includes a call to action demanding that NMFS "place a cap on the removals of pollock from the foraging area used by female NFS breeding on the Pribilof Islands." (*Id.* at 25)

## II. DISCUSSION

The Administrative Procedure Act requires courts to review an agency's action based on the agency record, but there are "narrow exceptions" to this rule. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014). CBD argues that two of those exceptions apply to Fritz's declaration. (Dkt. 26 at 4-13) Defendants disagree.

(Dkt. 38 at 7-14) They also raise a threshold timeliness issue. (*Id.* at 2-5) This order addresses each argument below.

**A. The motion is properly before the Court.**

Defendants argue that CBD's motion to admit the declaration is untimely because it was filed 19 days after the deadline for motions to complete and/or supplement the record. (Dkt. 38 at 8-11; *See* Dkt. 14 at 2) They claim they are prejudiced by this filing because it "put [them] in the untenable position of having to respond to a motion to supplement the record with extra-record evidence and merits briefing simultaneously, which is precisely what the scheduling order sought to avoid." (Dkt. 38 at 10) This argument is unavailing.

The Court remedied any potential prejudice when it granted Defendants' request to file the summary judgment opposition after receiving a ruling on the declaration's admissibility. (Dkt. 41) Regardless of whether CBD employed a timely procedural mechanism with the motion to admit extra-record evidence, that decision has not harmed Defendants, and the Court will consider the declaration's admissibility on its merits.

**B. The Declaration is not admitted under the *Lands Council* exceptions.**

"A court reviewing an agency's action may examine extra-record evidence only in limited circumstances that are narrowly construed and applied." *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1177 (9th Cir. 2022) (quoting *Goffney v. Becerra*, 995 F.3d 737, 747-48 (9th Cir. 2021)) (citation modified). Accordingly, a court may consider extra-record evidence where: "(1) admission of extra-record evidence is necessary to ascertain whether the agency considered all relevant factors and explained its decision; (2) the agency relied on documents not in the record; (3) clarification of technical matter is needed; or (4) the

agency acted in bad faith." *Id.* (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). The party seeking to admit extra-record evidence bears the "heavy burden" of demonstrating that a relevant exception applies. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). And because agency actions benefit from the presumption of regularity, "courts must presume that the agency properly designated the Administrative Record absent clear evidence to the contrary." *Safari Club Int'l.*, 31 F.4th at 1177 (quoting *Goffney*, 995 F.3d at 748) (citation modified).

CBD argues that the declaration should come in under two of the exceptions. They assert that (1) the declaration assists in summarizing complex and technical information and (2) the declaration identifies factors that NMFS failed to consider when setting the Harvest Specifications. (Dkt. 26 at 9) Those arguments are addressed in turn below.

**1. The Declaration is not necessary to understand complex science.**

CBD argues that the declaration "provides necessary background information regarding northern fur seal ecology and population modeling, as well as scientific studies linking pollock harvest to harmful effects on fur seals pup survival." (Dkt. 43 at 8) They assert that this "background information" is "key to understanding [their] claim." (Dkt. 26 at 11)

Defendants respond that the declaration "merely explains Mr. Fritz's opinion of available studies and his theory for northern fur seal population decline," and that the declaration "does not help the Court understand the agency's conclusion that there is conflicting and incomplete evidence on the pollock fishery's effects on the northern fur

seal population." (Dkt. 38 at 14) They further argue that the science in this case is not complex enough to warrant an explanatory declaration. (*Id.* at 15-16)

The declaration's background sections heavily cite one source in particular: Musbach et al. (2024). (*See* Dkt. 26-1 at 4-14) This "Musbach et al." cite is NMFS's Conservation Plan for the Eastern Pacific Stock of Northern Fur Seal. (REF 26366) The Plan is a comprehensive document that covers numerous topics like northern fur seal taxonomy, life history (including habitat use and diet), and population trends. (REF 26384-26410) Though somewhat dense, this Plan is comprehensible to a layperson reader. For example, the Plan explains that "[p]ollock is the predominant prey species for St. Paul fur seals that forage over the Bering Sea shelf, while Bogoslof and St. George fur seals foraging in the Bering Sea basin consume less pollock and higher concentrations of northern smoothtongue and gonatid squid." (REF26396) This resembles the declaration's statement that, "foraging habitats used by NFS breeding on St. Paul encompass more shelf habitat . . . than those breeding on St. George and considerably more than those from Bogoslof, resulting in the greatest importance of pollock as prey and the largest overlap with the pollock fishery." (Dkt. 26-1 at 13)

Another series of primary sources in the background section—studies by Towell et al.—support the declaration's discussion of historic seal pup population trends. (Dkt. 26-1 at 7-9) Two of these appear or are summarized in the record. (*See* REF 27774, 27912; *see also* 46154) And the declaration cites another document in the record for this population trends discussion: NMFS's Alaska Marine Mammal Stock Assessments authored by Young et al. (Dkt. 26-1. at 4; REF 10916) Like the Conservation Plan, the Stock Assessment is a

technical yet comprehensible document. (*See* REF 10923-30) And like the Plan, the Stock Assessment conveys information summarized in the declaration. (*compare* REF 10962-63 *with* Dkt. 26-1 at 7-8) Thus, the declaration is not necessary to understand that information in the record.

In contrast, the Short et al. study is more technical than the cited NMFS documents. (*See* REF 00001) CBD is correct that this study "contains complex scientific information and jargon" like "Pup Survival Perturbation Models," "Bayesian posterior distributions," and "fecundity parameters." (Dkt. 43 at 11) But the declaration does not actually explain those technical terms. (*See* Dkt. 26-1 at 15-21) Instead, the declaration simply recounts the study's thesis, results, and potential predictive value. As with the other documents in the record, the Court can review this study and understand the information it conveys. For example, Figure 6 on page 14 clearly demonstrates an inverse relationship between seal pup survival and pollock catch. (REF 00014) And the Court readily understands the study's statement that "[w]e suspect that the inverse relationship we infer between pollock catches in the EBS and Pribilof northern fur seal pup survival arises from competition between the pollock fishery and lactating female fur seals for high-density aggregations of pollock." (REF 00017)

The Court does not require Fritz's declaration to understand technical terms or complex subject matter. *See Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 704 (9th Cir. 1996). CBD has not met its "heavy burden" to show "clear evidence" that the additional evidence is required. *Fence Creek Cattle Co.*, 602 F.3d at 1131; *Safari Club Int'l.*, 31 F.4th at 1177-78. The Declaration is not admitted under this exception.

**2. The Declaration does not identify factors that NMFS failed to consider.**

CBD argues that the declaration identifies important aspects of the pollock harvest decision that NMFS failed to consider. (Dkt 26 at 14-18) Specifically, they cite the declaration's (1) explanation of continued fur seal population decline despite the cessation of the commercial hunt, (2) description of differences between seals on the Pribilof and Bogoslof Islands; (3) description of recent data compiled by NMFS regarding seal pup survival, and; (4) demonstration that the pollock trawl fishery is likely responsible for the ongoing fur seal population decline. (Dkt. 26-1 at 14-15)

Defendants respond that CBD fails to identify any information NMFS neglected to consider when issuing the Harvest Specifications. (Dkt. 38 at 18)

Extra-record evidence may be admitted when "necessary to determine whether the agency has considered all relevant factors and has explained its decision.'" *Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Div. v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996)). In essence, this exception allows extra-record evidence to show that the agency failed to consider an important aspect of its decision or fully explain its rationale. *See Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). Still, even if evidence "might have supplied a fuller record," it will not come in under this exception unless it "address[es] issues not already there." *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1451 (quoting *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986)). Thus, evidence does not come in where "the same information can be extracted from the record. *Id.*

The declaration is not necessary to establish whether NMFS failed to address relevant issues. Instead, the information within the declaration can be extracted from the record. For example, the Northern Fur Seal Conservation Plan discusses the dietary differences between St. Paul seals and Bogoslof seals. (REF 26396-97) It also discusses the history of fur seal hunting and the continued population decline. (REF 26397-414) In addition, the record contains recent NMFS data on pup production.[2] (REF 10961-69) Most importantly, the record already contains the evidence underlying Fritz's substantive discussion of pollock trawling and fur seal pup survival: Short et al. (REF 00001)

This exception does not allow Fritz to write a post-decisional evidentiary response arguing with NMFS's consideration of a study. Rather, CBD must show that NMFS's consideration of the study (or lack thereof) was arbitrary and capricious on the merits. The declaration is not necessary for that purpose because the underlying substance is already part of the record.

CBD has not met their burden to show that the declaration is necessary for judicial review under this exception.

## III. CONCLUSION

CBD's Motion to Admit Extra-Record Evidence is **DENIED**. Fritz's declaration is not part of the record. Review of this case is limited to the administrative record in existence at the time that NMFS issued the harvest specifications.

---

[2] CBD asks the Court to consider the population information from Young et al. 2026 because that information predates the harvest specifications. (Dkt. 43 at 8 n.2) This may be true, but the issue seems immaterial. The stock assessment appears to be part of the record via a 2023 memo from Towell, Ream, and Williams to NMFS. (REF 27912)

Defendants' opposition to the motion for summary judgment is due on November 20, 2026.

IT IS SO ORDERED.

DATED October 23, 2026, at Anchorage, Alaska.

/s/Aaron Christian Peterson
Aaron Christian Peterson
United States District Judge